216 N.J. Super. 39 (1987)
522 A.2d 1021
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CORNELIUS WALKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1986.
Decided March 16, 1987.
*40 Before Judges ANTELL, LONG and D'ANNUNZIO.
Alfred A. Slocum, Public Defender, attorney for defendant-appellant (Jeffrey S. Stoolman, designated counsel, of counsel and on the letter brief).
W. Cary Edwards, Attorney General, attorney for plaintiff-respondent (Robin Parker, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.S.C. (temporarily assigned).
An Essex County Indictment charged defendant with second degree aggravated assault, contrary to N.J.S.A. 2C:12-1 b(1) (count one); aggravated sexual assault, a first degree crime, contrary to N.J.S.A. 2C:14-2 (count two) and fourth degree resisting arrest, contrary to N.J.S.A. 2C:29-2 (count three). A jury returned guilty verdicts on counts two and three and on *41 the lesser included offense of simple assault on count one. Defendant appeals. We affirm.
On appeal, defendant raises the following issues:
POINT I The trial court erred in denying the Defendant's motion to acquit him of the charges of aggravated assault and aggravated sexual assault.
POINT II The trial court committed plain error when it did not sua sponte [sic] strike part of the Prosecutor's inflammatory summary [sic] argument which referred to the Defendant as a professional rapist. (Not raised below)
POINT III The trial court erred in not granting a mistrial or temporarily halting the proceedings for a private psychiatric examination of the Defendant when the Defendant experienced a mental breakdown during his counsel's summation. (Not raised below)
The only issue requiring discussion is defendant's contention that the trial court erred in denying his motion to acquit addressed to the charge of aggravated sexual assault.
The State introduced evidence to establish that defendant entered an office building in Bloomfield, New Jersey during regular business hours. The victim was an employee of a firm occupying the building. As the victim emerged from a women's restroom into the public hallway, she was confronted by defendant. He pushed her into the restroom, punched and threatened her and committed an act of sexual penetration.
Defendant conceded having had sexual contact with the victim but testified that she approached him, a stranger, in the hallway and invited him into the restroom for a consensual sexual adventure. The jury resolved the credibility issue in favor of the State.
Sexual penetration constitutes aggravated sexual assault if the actor uses physical force or coercion "and severe personal injury is sustained by the victim." N.J.S.A. 2C:14-2 a.(6). Severe personal injury is defined as "severe bodily injury, disfigurement, disease, incapacitating mental anguish or chronic pain." N.J.S.A. 2C:14-1 f. The theory of the State's case is that the victim sustained incapacitating mental anguish (sometimes hereinafter referred to as IMA) as a result of this incident.
*42 Defendant contends that the evidence was inadequate to establish that the victim sustained IMA. Specifically, it is contended that the testimony of an expert, presumably a psychiatrist or a psychologist, is necessary to prove that the victim sustained IMA.
Chapter 14 of the N.J.Code of Criminal Justice does not define incapacitating mental anguish. In the absence of statutory definition, words are to be given their ordinary and well understood meaning. In re Barnert Memorial Hospital Rates, 92 N.J. 31 (1983). A dictionary defines "anguish" as "extreme pain either of body or mind" and "excruciating distress." Webster's Third New International Dictionary (1971). In a personal injury context mental anguish was defined as "the mental suffering resulting from emotions such as grief and despair." Martin v. U.S., 448 F. Supp. 855, 876 (E.D.Ark. 1977), modified on other grounds, 586 F.2d 1206 (8th Cir.1978).
Other jurisdictions have construed similar terms in the context of sexual offense statutes.[1] In Michigan, the element of mental anguish elevates a sexual assault to a first degree crime. M.S.A. § 28.788(2)(1)(f) [M.C.L.A. § 750.520b(1)(f)] and M.S.A. § 28.788(1)(j) [M.C.L.A. § 750.520a(j)]. The Michigan Supreme Court in People v. Petrella, 424 Mich. 221, 380 N.W.2d 11 (1985), resolved a conflict within the Michigan Court of Appeals[2] when it defined mental anguish as "extreme or excruciating *43 pain, distress, or suffering of the mind." Id. at 424 Mich. 257, 380 N.W.2d 27. The Michigan statute does not require mental anguish to be incapacitating.
Under New Mexico statutes, criminal sexual penetration is elevated from third degree to second degree if the use of force or coercion results in mental anguish. N.M.S.A. 1953 § 40A-9-21 B.(2) and N.M.S.A. 1953 § 40A-9-20 C. State v. Jiminez, 89 N.M. 652, 556 P.2d 60 (Ct. of Appeals, 1976) held that mental anguish means distress of the mind.[3]
We recognize that mental anguish is a boundary between a crime which carries a ten year maximum sentence and a crime which doubles that exposure. We are satisfied that, in the context of the New Jersey statutory scheme, mental anguish means severe emotional distress or suffering. This definition is consistent with the ordinary and common understanding of the words used and is consistent with the operative adjective in the statutory element of severe personal injury.
Incapacitating mental anguish is one component of the statutory definition of "severe personal injury". N.J.S.A. 2C:14-1 f. That definition also includes "severe bodily injury, disfigurement, disease ... or chronic pain." Of these components, only mental anguish must be incapacitating. "Incapable" is defined as "not able or fit for the doing or performance ...," and "incapacity" is defined as "the state of being incapable" as well as a "lack of physical or intellectual power...." Webster's Third New International Dictionary (1971). In the context of *44 workers' compensation "incapacity" means "inability to perform labor." Yeomans v. Jersey City, 27 N.J. 496, 508 (1958).
It is probable that most rapes cause the victim to suffer emotional distress. The requirement that mental anguish be incapacitating accomplishes two goals. It provides corroboration that the victim's distress is severe, and it justifies greater punishment. With these legislative purposes in mind, and consistent with the ordinary and common understanding of the words used, we define incapacitating mental anguish as severe emotional distress or suffering which results in a temporary or permanent inability of the victim to function in some significant aspect of her life, such as in her employment, her ability to care for herself or in her capacity as spouse, homemaker or mother. In this context, temporary incapacity means more than a mere fleeting, short-lived or brief incapacity. Were it otherwise almost every sexual assault in which the actor uses physical force or coercion to commit an act of penetration would be a first degree crime. Such is not the intent of N.J.S.A. 2C:14-2 c(1).
The victim's testimony would support a finding that immediately after the attack she was unable "to sleep for about four days, day or night", that she was "very angry ... very hostile" toward her husband, that she could not concentrate on her work, that she could not stop crying and that she was unable to return to work until July 19, 1983 when she returned to work on a part-time basis. The offense occurred on April 27, 1983. She also testified that until the middle of July she was afraid to leave her home and did not do so except to attend counselling sessions and to visit her brother. The victim did not return to full time employment until early September.
Her counselor, Beverly Lanty, a registered nurse and social worker with substantial credentials and experience in the fields of nursing, social work and marital and family therapy, met with the victim on May 5, 1983, eight days after the assault. Ms. Lanty testified that the victim was shaking, crying and *45 manifesting difficulty in speaking. She described the victim as looking very tired, depressed, and in a state of shock.
Defendant contends that Ms. Lanty was testifying beyond her expertise. We disagree. Her testimony related to the jury her observations of the victim and the victim's demeanor. A witness need not be an expert to make and describe these observations. Moreover, Ms. Lanty's observations were within the ambit of her education, training and work experience. Therefore, she had the necessary expertise, if any was required, to make those observations. Furthermore, Ms. Lanty did not render an opinion as to whether the victim sustained incapacitating mental anguish nor was such an opinion from an expert necessary to support this conviction.
Expert testimony is required if the issue to be decided "is so esoteric that jurors of common judgment and experience cannot form a valid judgment ..." Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982). Expert testimony is justified when the average juror "is relatively helpless in dealing with a subject that is not a matter of common knowledge." State v. Kelly, 97 N.J. 178, 209 (1984). In Kelly, the court held that an understanding of the battered woman's syndrome is beyond the ken of the average juror. But, the court stated:
No expert is needed, however, ... to tell the jury the logical conclusion ... that a person who has in fact been severely and continuously beaten might very well reasonably fear that the imminent beating she was about to suffer could be either life threatening or pose a risk of serious injury. [Id. at 207]
In the case at bar, the victim described the impact of the rape upon her. It was for the jury to decide whether the description was credible. If the jury accepted the victim's version of the incident and the physical and emotional abuse she sustained during the incident, that version would support a finding of a nexus between the rape and the victim's post-rape emotional state as described by her and as corroborated by Ms. Lanty. Those findings are within the common experience and knowledge of the average juror as is the ultimate conclusion that the victim suffered mental anguish (severe emotional distress) *46 which resulted in a temporary inability of the victim to function as an employee, as a spouse and in other significant aspects of her life.[4]
The remaining issues raised by the defendant are clearly without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Six other states have statutes which consider the impact of a sex crime on the victim's mental or emotional health in determining the severity of the offense. 11 Del. Code Ann., § 764; Mich. Stat. Ann. § 28.788(1)(j) [M.C.L.A. § 750.520a(j)]; Minn. Stat. Ann. § 609.341(8); Neb. Rev. Stat., § 28.318(3); N.H. Rev. Stat. Ann. § 632-A 1 (III); N.M. Stat. Ann. § 30-9-10(B)(C).
[2] People v. Gorney, 99 Mich. App. 199, 297 N.W.2d 648 (Ct. of Appeals, 1980), held that mental anguish means extreme or serious mental anguish. People v. Jenkins, 121 Mich. App. 195, 328 N.W.2d 403 (Ct. of Appeals, 1982) held that mental anguish means mental distress greater than that normally suffered by victims of sexual assaults. Petrella rejected the Gorney definition as redundant and rejected the Jenkins definition because the Supreme Court was not satisfied that there was a victim's reaction to rape that could be identified as normal or usual.
[3] In New Mexico a second degree criminal sexual penetration elevates to first degree if the victim suffers "great mental anguish" which is defined in the statute as "psychological or emotional damage that requires psychiatric or psychological treatment or care, either on an in-patient or out-patient basis and is characterized by extreme behavioral change or severe physical symptoms." N.M.S.A. 1953 § 40A-9-20 B.
[4] If the State's case was based upon an alleged permanent disability or upon an alleged mental illness or disease resulting from the rape a much stronger case for the requirement of expert testimony would be presented.